Adam P. Bailey (CA Bar No. 278208)
Hobbs, Straus, Dean & Walker, LLP
1903 21st St., 3rd Floor
Sacramento, CA  95811
Phone: (916) 442-9444
Fax: (916) 442-8344
Email: abailey@hobbsstraus.com
*Attorney for Northern Valley Indian Health, Inc.*

## UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **NORTHERN VALLEY INDIAN HEALTH, INC.** | )<br>)<br>) |
| PLAINTIFF, | )<br>) |
| v. | )<br>) |
| **XAVIER BECERRA**, in his official capacity as Secretary,<br>U.S. Department of Health & Human Services;<br><br>**ROSELYN TSO**, in her official capacity as Director,<br>Indian Health Service;<br><br>**UNITED STATES OF AMERICA,**<br><br>DEFENDANTS. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. _____ [Judge Initials]<br>**COMPLAINT** |

## **COMPLAINT**

## **JURISDICTION**

COMPLAINT - 1 -

1. This controversy arises under agreements between the United States and Northern Valley Indian Health, Inc. for the operation of federal health programs for Indians carried out pursuant to the Indian Self-Determination and Education Assistance Act ("ISDEAA"), Pub. L. No. 93-638 (codified as amended at 25 U.S.C. §§ 5301−5399). This Court has subject matter jurisdiction under the Contract Disputes Act, 41 U.S.C. § 7104(b), and the ISDEAA, 25 U.S.C. § 5331(a), which provides original jurisdiction to United States district courts, concurrent with the Court of Federal Claims, over civil actions for money damages arising under ISDEAA contracts.

2. In a letter dated December 14, 2022, NVIH requested an Indian Health Service ("IHS") contracting officer's decision on a claim for underpaid contract support costs ("CSC") for calendar year ("CY") 2016. In a letter dated November 17, 2023, the IHS denied NVIH's claim. Decision Letter at 1. NVIH has filed this action within 12 months of receipt of the IHS decision, as required by the Contract Disputes Act. 41 U.S.C. § 7104(b)(3).

3. This Court has jurisdiction to review the IHS's decision on the CY 2016 claim under the Contract Disputes Act and Section 110 of the ISDEAA. 41 U.S.C. § 7104(b); 25 U.S.C. §§ 5331(a) & (d).

**VENUE**

4. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this action occurred in this judicial district and because all Defendants are subject to this Court's exercise of personal jurisdiction.

COMPLAINT - 2 -

**INTRODUCTION AND SUMMARY**

Plaintiff Northern Valley Indian Health, Inc., for its cause of action against the Defendants named above, alleges as follows:

5. This is a suit against the United States for breach of contract and statute by the Indian Health Service ("IHS"), an agency in the U.S. Department of Health and Human Services ("HHS"). Plaintiff, Northern Valley Indian Health, Inc. ("NVIH"), seeks money damages under the Contract Disputes Act, 41 U.S.C. §§ 7101−7109, and the ISDEAA, 25 U.S.C. § 5331(a), based on Defendant Secretary of Health and Human Services Xavier Becerra's ("Secretary") violation of NVIH's contractual and statutory right to the payment of full funding of contract support costs ("CSC") for a compact and funding agreement entered into under the ISDEAA.

6. The Supreme Court has held that the United States' failure to pay the full CSC associated with its ISDEAA agreements constitutes a violation of federal law and breach of contract. *Salazar v. Ramah Navajo Chapter*, 567 U.S. 182, 185 (2012) ("[W]e hold that the Government must pay each tribe's contract support costs in full."); *Cherokee Nation v. Leavitt*, 543 U.S. 631, 634 (2005) ("The [ISDEAA] specifies that the Government must pay a tribe's costs, including administrative expenses.").

7. The Supreme Court has held that the United States' failure to pay CSC on expenditures of third-party revenues in support of contracted programs, services, functions, and activities is a violation of the ISDEAA. *Becerra v. San Carlos Apache Tribe*, 144 S. Ct. 1428, 1445 (2024).

8. Defendants breached NVIH's agreements and violated the ISDEAA by failing to pay the full CSC owed to NVIH under the statute and NVIH's Compact and Funding Agreement for calendar year ("CY") 2016.

9. Defendants paid only a portion of the CSC owed under the NVIH contract, due to their misinterpretation of the ISDEAA. Specifically, the IHS failed to pay CSC associated with the portion of NVIH's health care program funded with third-party revenues—payments from Medicare, Medicaid, private insurers, and others.

10. In a letter dated December 14, 2022, NVIH requested an IHS contracting officer's decision on a claim for underpaid CSC for CY 2016. In a letter dated November 17, 2023, the IHS denied NVIH's claim. Letter from Darrell LaRoche, Deputy Dir. for Mgmt. Operations, Indian Health Serv., to Mr. Inder Wadhwa, Chief Exec. Officer, N. Valley Indian Health, at 1 (Nov. 17, 2023) (hereinafter "Decision Letter").

11. This action challenges the IHS's denial of NVIH's Contract Disputes Act claim for CY 2016, and seeks damages and other relief.

**PARTIES**

12. Plaintiff Northern Valley Indian Health, Inc. is authorized to deliver health care services under the terms of the Funding Agreement between certain Indian tribes in California's Central Valley and the Department of Human Health Services. NVIH is a "tribal organization" eligible to contract and compact with the IHS under the ISDEAA. *See* 25 U.S.C. § 5304(l). NVIH carries out a range of health care programs, functions, services, and activities ("PFSAs") at its clinics in Butte, Glenn, Tehama, and Yolo counties.

COMPLAINT - 4 -

14. Defendant Xavier Becerra, the Secretary of HHS, has overall responsibility for carrying out all the functions, responsibilities, authorities and duties of the U.S. Department of Health and Human Services, including oversight of the IHS, an agency within the Department. He is sued in his official capacity.

15. Defendant Roselyn Tso is the Director of the IHS, the agency charged by law with the responsibility for implementing the ISDEAA and other health laws benefiting American Indians and Alaska Natives, on behalf of the United States. 25 U.S.C. § 1661(c)(3). She is sued in her official capacity.

16. Defendant United States is a party to NVIH's ISDEAA agreements. *See* Compact Between Northern Valley Indian Health, Inc. and the United States of America ("Compact"); FY 2011 Funding Agreement By and Between Northern Valley Indian Health, Inc. And The United States of America, U.S. Department of Health And Human Services, U.S. Indian Health Service ("Funding Agreement").

**STATUTORY BACKGROUND: THE ISDEAA**

17. NVIH provides health care services to eligible American Indians, Alaska Natives, and other eligible beneficiaries pursuant to its Compact and Funding Agreement authorized by Title V of the ISDEAA, 25 U.S.C. §§ 5381−5399.

18. The Funding Agreement in effect in CY 2016 had an initial term of January 1, 2011 through December 31, 2011, but was to remain in effect until a successor Funding Agreement was executed. Funding Agreement § 3(c). NVIH and the IHS did not execute a new funding agreement until 2021, so the 2011 Funding Agreement was in effect in CY 2016.

COMPLAINT - 5 -

19. The ISDEAA authorizes NVIH, other tribes, and tribal organizations to assume responsibility to provide PFSAs that the Secretary would otherwise be obligated to provide. In return, the Secretary must provide NVIH two types of funding under Section 106(a) of the ISDEAA: (1) "program" funds, the amount the Secretary would have provided for the PFSAs had the IHS retained responsibility for them, *see* 25 U.S.C. § 5325(a)(1), sometimes called the "Secretarial amount" or the "106(a)(1) amount"; and (2) "contract support costs," the reasonable administrative and overhead costs associated with carrying out the PFSAs, *see* 25 U.S.C. §§ 5325(a)(2) & (3); *id.* § 5396(a) (mandatory application of section 5325(a) through (k) to Title V agreements).

20. There are three types of CSC: (1) pre-award and start-up costs, which are one-time costs to plan, prepare for and assume operation of new or expanded PFSAs, *see* 25 U.S.C. §§ 5325(a)(5) & (6); (2) indirect CSC, which are costs incurred for a common or joint purpose benefiting more than one PFSA, such as administrative and overhead costs, *see* 25 U.S.C. § 5325(a)(2); and (3) direct CSC, which are expenses directly attributable to a certain PFSA but not captured in either the indirect cost pool or the 106(a)(1) amount, such as workers' compensation insurance or other expenses the Secretary would not have incurred because, for example, the Government is self-insured, *see* 25 U.S.C. § 5325(a)(3)(A). This action involves both direct and indirect CSC.

21. The ISDEAA requires that, upon approval of the contract, "the Secretary shall add to the contract the full amount of funds to which the contractor is entitled [under section 106(a) of the ISDEAA]," including CSC. 25 U.S.C. § 5325(g) (emphasis added);

*see also Cherokee Nation*, 543 U.S. at 634 ("The [ISDEAA] specifies that the Government must pay a tribe's costs, including administrative expenses.").

22. The Supreme Court has held that the ISDEAA requires the IHS to pay CSC that Tribes incur when they expend third-party revenue to further the PFSAs of the contract or compact. *Becerra*, 144 S. Ct. at 1443.

## GENERAL ALLEGATIONS

*Program Income*

23. When the IHS provides direct services to eligible beneficiaries, the PFSAs are funded not only by funds appropriated by Congress, but by third-party revenues billed to and collected from Medicare, Medicaid, the Children's Health Insurance Program, private insurers, and others. *See generally* 42 U.S.C. §§ 1395 *et seq.*, 1396 *et seq.*, 1397aa *et seq*. Each year in its budget request to Congress, the IHS estimates how much third-party revenue will be collected and available to spend on services, based on past collections. *See, e.g.*, Dep't of Health & Hum. Servs., *Indian Health Service FY 2021 Justification of Estimates for Appropriations Committees*, at CJ-188 (reporting that in FY 2020, the IHS collected an estimated $1.194 billion from third-party insurers). "Public and private collections represent a significant portion of the IHS and Tribal health care delivery budgets"—often 60% or more. *Id*.

24. By the same token, NVIH, when carrying out PFSAs under its Compact and Funding Agreement, is legally and contractually obligated to collect third-party revenues and use them to provide further services within the scope of the agreements with the IHS. Title V of the ISDEAA mandates as follows:

COMPLAINT - 7 -

> (j) PROGRAM INCOME.--All Medicare, Medicaid, or other program income earned by an Indian tribe shall be treated as supplemental funding to that negotiated in the funding agreement.  The Indian tribe may retain all such income and expend such funds in the current year or in future years except to the extent that the Indian Health Care Improvement Act (25 U.S.C. 1601 et seq.) provides otherwise for Medicare and Medicaid receipts.  Such funds shall not result in any offset or reduction in the amount of funds the Indian tribe is authorized to receive under its funding agreement in the year the program income is received or for any subsequent fiscal year.

25 U.S.C. § 5388(j).  Thus, by law, these third-party revenue funds are part of the federal program carried out by NVIH under its ISDEAA agreements.  *See Becerra,* 144 S. Ct. at 1437.

25. Similarly, the Compact provides as follows:

> NVIH is obligated and entitled to directly collect and retain reimbursement for Medicare and Medicaid and any other third party payors for services provided under this Agreement in accordance with section 401 of the Indian Health Care Improvement Act as amended at 25 U.S.C. § 1641 and Section 206 of such Act, 25 U.S.C. § 1621e, as amended . . . . Pursuant to § 508(j) of Title V [of the ISDEAA], all Medicare, Medicaid, third party insurance recoveries or other program income earned by NVIH shall be treated as supplemental funding to that negotiated in the [Funding Agreement].

Compact art. II, §§ 9(a) & (b).

26. Any third-party revenues collected by NVIH are designated by statute and IHS regulations as "program income" that must be, and is, expended in support of PFSAs included in NVIH's Funding Agreement with the IHS.  *Becerra,* 144 S. Ct. at 1437; *see also* 25 U.S.C. § 5388(j) ("All Medicare, Medicaid, or other program income earned by an Indian tribe shall be treated as supplemental funding to that negotiated in the funding agreement."); 42 C.F.R. § 137.110 ("All Medicare, Medicaid, or other program income

COMPLAINT - 8 -

1  earned by a Self-Governance Tribe shall be treated as supplemental funding to that

2  negotiated in the funding agreement.").

3       27.    The Indian Health Manual ("IHM") acknowledges that a tribe's "Total

4  Health Care Program" includes the portion funded by "collections from Medicare,

5  Medicaid, and private insurance," not just IHS appropriations. IHM § 6-3.1(G)(34),

6  https://www.ihs.gov/ihm/pc/part-6/p6c3/. Therefore, that portion must be included when

7  calculating the amount of CSC owed to the tribe. *Id.* §§ 6-3.2(E)(1)(a)(i), (E)(1)(b).

8  ***Calculation of Contract Support Costs***

9       28.    As noted above, the ISDEAA requires the IHS to pay full CSC, *Ramah*,

10  567 U.S. at 185; *Cherokee Nation*, 543 U.S. at 634, including on expenditures of third-

11  party revenues, *Becerra*, 144 S. Ct. at 1443. For NVIH, as for most tribes, the full

12  amount of indirect CSC is determined by multiplying a negotiated indirect cost rate by

13  the amount of the direct cost base. *See* 25 U.S.C. §§ 5325(c)(3), (4) & (5) (requiring the

14  Secretary to report annually on tribes' indirect cost rates and direct cost bases); *Cherokee*

15  *Nation*, 543 U.S. at 635 ("Most contract support costs are indirect costs 'generally

16  calculated by applying an "indirect cost rate" to the amount of funds otherwise payable to

17  the Tribe.'")

18       29.    NVIH's CY 2016 indirect cost rate agreement with the Department of the

19  Health and Human Services' Cost Allocation Services, which applies government-wide,

20  calls for an indirect cost rate of 29% on a direct cost base comprised of "[t]otal direct

21  costs excluding capital expenditures." Nonprofit Rate Agreement (Aug. 3, 2016).

22

23

30. The IHS accepts NVIH's rates, as it must. The controversy is over the amount of the direct cost base. Specifically, the issue is whether third-party revenues expended to provide services within the scope of NVIH's ISDEAA agreements are part of the direct cost base and therefore generate CSC requirements. The IHS argues, in its decision denying NVIH's claims, that only the Secretarial amount generates CSC, and the Secretarial amount is limited to funding for PFSAs transferred under the ISDEAA agreement. Decision Letter at 4−5. But the Supreme Court has since affirmed that expenditures of third-party revenues to carry out PFSAs included in an ISDEAA agreement are part of the "Federal program" that generates CSC under 25 U.S.C. § 5325(a)(3). *Becerra*, 144 S. Ct. at 1440−41.

31. Yet in CY 2016, IHS paid no CSC in support of health care services funded by third-party revenues, giving rise to the damages described next.

32. As documented in NVIH's CY 2016 audited financial records, NVIH expended $19,713,481 in third-party revenues on the IHS-funded health program in CY 2016. Crediting IHS with $2,076,615 in exclusions (for equipment and subcontracts) leaves a third-party direct cost base of $17,636,866. Applying NVIH's negotiated indirect cost rate of 29.00% to this base yields an indirect CSC requirement of $5,114,691. IHS paid no CSC in support of those funds, giving rise to a claim for unpaid indirect CSC in the amount of $5,114,691.

33. Of the third-party expenditures, $1,769,580 was for fringe benefits, as documented in the audit cited above. These costs were eligible for reimbursement as direct contract support costs (DCSC). *See* IHM, pt. 6, ch. 3, ex. 6-3-G ("Fringe benefit

COMPLAINT - 10 -

costs continue to make up the majority of the approved DCSC requirement."), https://www.ihs.gov/ihm/pc/part-6/p6c3-ex-g/. IHS did not pay these costs, so NVIH's claim includes damages for unpaid direct CSC. NVIH's CY 2016 claim therefore consists of the sum of DCSC ($1,769,580) and indirect CSC ($5,114,691) for a total claim of $6,884,271.

*Procedural History of the Claims*

34. In a letter dated December 14, 2022, NVIH requested an IHS contracting officer's decision on the claim for unpaid CSC in CY 2016.

35. The IHS denied NVIH's claim in a letter dated November 17, 2023. In the denial letter, the IHS argued that the Secretarial amount generating CSC needs is limited to appropriated funds transferred in the Funding Agreement and may not include third-party collections.

36. NVIH filed this action within twelve months of receipt of the IHS decision, as authorized by the Contract Disputes Act. 41 U.S.C. § 7104(b)(3).

*Rule of Construction*

37. The ISDEAA incorporates its own rule of interpretation: "Each provision of [Title V] and each provision of a compact or funding agreement shall be liberally construed for the benefit of the Indian tribe participating in self-governance and any ambiguity shall be resolved in favor of the Indian tribe." 25 U.S.C. § 5392(f). Applying a similar interpretive rule from Title I, the Supreme Court has said that the government "must demonstrate that its reading [of the ISDEAA] is clearly required by the statutory language." *Ramah*, 567 U.S. at 194.

COMPLAINT - 11 -

## COUNT I – Violation of the ISDEAA

38. All prior allegations are adopted by reference as if fully set forth here.

39. The ISDEAA requires the IHS to pay NVIH's contract support costs in full. 25 U.S.C. § 5325(a) & (g); *Ramah*, 567 U.S. at 185.

40. The IHS failed to pay indirect CSC on that portion of NVIH's health care program funded by third-party revenues expended to provide services under the Funding Agreement.

41. In doing so, the IHS violated the ISDEAA. *Becerra*, 144 S. Ct. at 1445.

42. As a result of the IHS's violation of the ISDEAA, NVIH sustained damages totaling $6,884,271.

43. Defendants are liable to NVIH, under 25 U.S.C. § 5331(a), for its CY 2016 total damages of $6,884,271.

## COUNT II – Breach of Contract

44. All prior allegations are adopted by reference as if fully set forth here.

45. The Compact and Funding Agreement incorporate the statutory duty to fully fund CSC. *See, e.g.*, Funding Agreement § 5 (referencing 25 U.S.C. §§ 458aaa-7(c), 458aaa-18(b), and 450j-1, which have since been recodified as 25 U.S.C. §§ 5388(c), 5399(b), and 5325, respectively). This duty was affirmed by the Supreme Court in *Becerra*, *Ramah* and *Cherokee Nation*, *supra*.

46. By failing to pay indirect CSC on the third-party revenue-funded portion of the NVIH health care program, the IHS breached its contractual agreements with NVIH.

47. As a result of the IHS's breach of its contractual agreements, NVIH sustained damages totaling $6,884,271 in CY 2016.

48. NVIH therefore seeks an award of damages in the total amount of $6,884,271 under the ISDEAA, 25 U.S.C. §§ 5331(a) & (d), and the Contract Disputes Act, 41 U.S.C. §§ 7101-7109.

**PRAYER FOR RELIEF**

49. NVIH respectfully requests the Court grant relief as follows:

    A. Award NVIH $6,884,271 in damages for unpaid direct and indirect CSC;

    B. Award such other damages as may be proven in this action;

    C. Order the payment of interest on this claim pursuant to the Contract Disputes Act, 41 U.S.C. § 7109;

    D. Award the Tribe its attorney fees and expenses pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412; 25 U.S.C. § 5331(c), and other applicable law; and

    E. Grant NVIH such other and further relief as the Court deems appropriate.

//

//

//

//

//

DATED: August 9, 2024

                    Respectfully Submitted,

                    Adam P. Bailey
                    Hobbs, Straus, Dean & Walker, LLP
                    *Attorney for Northern Valley Indian Health, Inc.*

                    By:  /s/ Adam P. Bailey
                    Adam P. Bailey (CA Bar # 278208)

                    DATED: August 9, 2024